UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MATCIARA FINKLEY,<br><br>            Plaintiff,<br><br>     v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,<br><br>            Defendant. | CASE NO. 13-cv-05210 RJB<br><br>REPORT AND RECOMMENDATION ON PLAINTIFF'S COMPLAINT<br><br>Noting Date: March 7, 2014 |

This matter has been referred to United States Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR 4(a)(4), and as authorized by *Mathews, Secretary of H.E.W. v. Weber*, 423 U.S. 261, 271-72 (1976). This matter has been fully briefed (*see* ECF Nos. 14, 17, 18).

After suffering a long history of sexual and physical abuse during her childhood and throughout her military career, plaintiff demonstrated to her treating or examining psychologists that she could not maintain concentration, persistence and pace, or avoid

panic attacks sufficient to maintain regular employment. The ALJ's did not provide specific and legitimate reasons for rejecting those opinions and his finding to the contrary is not supported by substantial evidence in the record. Nevertheless, because there are conflicting opinions regarding plaintiff's level of functioning, this matter should be reversed and remanded for further proceedings.

## BACKGROUND

Plaintiff, MATCIARA FINKLEY, was born in 1982 and was sexually molested by an uncle and harassed by her mother's boyfriends as a child (Tr. 291, 414, 542). Plaintiff graduated from high school and joined the Army (Tr. 291). While in the military, plaintiff was sexually harassed by her supervisor, sexually assaulted by men who outranked her, and physically abused by her daughter's father (Tr. 52, 308, 477-78). Although she reported these incidents, nothing was done to stop it (Tr. 308, 478). Plaintiff has worked part-time briefly in retail (Tr. 50) and in-home childcare (Tr. 51) but was unable to hold down a job because of her anxiety and depression (Tr. 314). Plaintiff was 27 years old on the alleged date of disability onset of May 5, 2010 (*see* Tr. 196).

Plaintiff has at least the severe impairments of "knee arthralgia and weakness; posttraumatic stress disorder ("PTSD"); panic disorder with agoraphobia; and mood disorder not other specified ("NOS") (20 CFR 404.1520(c) and 416.920(c))" (Tr. 23).

At the time of the hearing, plaintiff was living in an apartment with her 9-year old daughter (Tr. 43).

1

## PROCEDURAL HISTORY

2      Plaintiff protectively filed an application for disability insurance ("DIB") benefits

3   pursuant to 42 U.S.C. § 423 (Title II) and Supplemental Security Income ("SSI") benefits

4   pursuant to 42 U.S.C. § 1382(a) (Title XVI) of the Social Security Act on May 10, 2011

5   (*see* Tr. 21, 196-204). The applications were denied initially and following

6   reconsideration in 2011 (Tr. 67-90, 95-124). Plaintiff's requested hearing was held before

7   Administrative Law Judge Robert P. Kingsley ("the ALJ") on June 12, 2012 (*see* Tr. 37-

8   66). On August 10, 2012, the ALJ issued a written decision in which the ALJ concluded

9   that plaintiff was not disabled pursuant to the Social Security Act (*see* Tr. 18-36).

10

11      On February 6, 2013, the Appeals Council denied plaintiff's request for review,

12  making the written decision by the ALJ the final agency decision subject to judicial

13  review (Tr. 1-5). *See* 20 C.F.R. § 404.981. Plaintiff filed a complaint in this Court

14  seeking judicial review of the ALJ's written decision in March of 2013 (*see* ECF Nos. 1,

15  3). Defendant filed the sealed administrative record regarding this matter ("Tr.") on May

16  31, 2013 (*see* ECF Nos. 9, 10).

17      In plaintiff's Opening Brief, plaintiff raises the following issues:  (1) Whether or

18  not the ALJ properly assessed plaintiff's residual functional capacity; (2) Whether or not

19  the ALJ properly evaluated the medical opinion evidence regarding plaintiff's mental

20  limitations; and (3) Whether or not the ALJ properly evaluated the testimonial evidence

21  about her symptoms and limitations (*see* ECF No. 14, p. 1).

22

23

24

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 3

## STANDARD OF REVIEW

Plaintiff bears the burden of proving disability within the meaning of the Social Security Act (hereinafter "the Act"); although the burden shifts to the Commissioner on the fifth and final step of the sequential disability evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140, 146 n. 5 (1987). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment "which can be expected to result in death or which has lasted, or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled pursuant to the Act only if claimant's impairment(s) are of such severity that claimant is unable to do previous work, and cannot, considering the claimant's age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting Davis v. Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)). Regarding the question of whether or not

1  substantial evidence supports the findings by the ALJ, the Court should "review the

2  administrative record as a whole, weighing both the evidence that supports and that

3  which detracts from the ALJ's conclusion.'" *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th

4  Cir. 1995) (*citing Magallanes, supra*, 881 F.2d at 750).

5        In addition, the Court must independently determine whether or not "'the

6  Commissioner's decision is (1) free of legal error and (2) is supported by substantial

7  evidence.'" *See Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2006) (*citing Moore v.

8  Comm'r of the Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002) (collecting cases));

9  *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996) (*citing Stone v. Heckler*, 761 F.2d

10  530, 532 (9th Cir. 1985)). According to the Ninth Circuit, "[l]ong-standing principles of

11  administrative law require us to review the ALJ's decision based on the reasoning and

12  actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit

13  what the adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219,

14  1225-26 (9th Cir. 2009) (*citing SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (other

15  citation omitted)); *see also Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) ("we

16  may not uphold an agency's decision on a ground not actually relied on by the agency")

17  (*citing Chenery Corp, supra*, 332 U.S. at 196). In the context of social security appeals,

18  legal errors committed by the ALJ may be considered harmless where the error is

19  irrelevant to the ultimate disability conclusion when considering the record as a whole.

20  *Molina, supra*, 674 F.3d at 1117-1122; *see also* 28 U.S.C. § 2111; *Shinsheki v. Sanders*,

21  556 U.S. 396, 407 (2009).

22

23

24

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 5

## DISCUSSION

**(1)   Whether or not the ALJ properly assessed plaintiff's residual functional capacity ("RFC").**

The ALJ found that plaintiff could perform simple routine repetitive work with occasional superficial interaction with supervisors, coworkers and the public and few changes to the work setting (Tr. 25-26).  Plaintiff argues that she cannot meet these requirements because: (1) she lacks sufficient concentration, persistence and pace; (2) she lacks the capacity to engage in the social functioning required by the RFC; and (3) she is unable to handle the stress required to maintain employment (ECF No. 14, pp. 5-18).  In reaching his decision, the ALJ relied primarily on the opinion of two consulting state psychologists, Dr. Edward Beaty, Ph.D. and Dr. Thomas Clifford, Ph.D., who concluded that plaintiff was capable of performing within the RFC (Tr. 28).  The ALJ rejected, or did not accept fully, the opinions of examining and treating mental health care professionals, including Dr. Denise Chang, M.D., Dr. Nichole Seymanski, Psy.D., Loraine Allen, M.A., and Caroline Cyr, M.S. at Greater Lakes Mental Health (Tr. 26-29).

As noted by the Ninth Circuit, "Social Security Regulations define residual functional capacity as the 'maximum degree to which the individual retains the capacity for *sustained* performance of the physical-mental requirements of jobs." *Reddick v. Chater*, 157 F.3d 715, 724 (9th Cir. 1998)) (*quoting* 20 C.F.R. § 404, Subpart P, App. 2 § 200.00(c)) (emphasis added by Ninth Circuit); *see also* SSR 96-8p, 1996 SSR LEXIS 5 at *5. Residual functional capacity is the most a claimant can do despite existing

limitations. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a); *see also* 20 C.F.R. § 404, Subpart P, App. 2 § 200.00(c).

In evaluating whether or not a claimant satisfies the disability criteria, the Commissioner evaluates the claimant's "ability to work on a sustained basis." *See* 20 C.F.R. § 404.1512(a).  The regulations further specify:  "When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b); *see also* 20 C.F.R. § 404.1545(c) (mental abilities).

The determination regarding an RFC depends on a proper evaluation of the medical evidence. The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence.  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (*citing Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). Determining whether or not inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999)).  If the medical evidence in the record is not conclusive, sole responsibility for resolving conflicting testimony and questions of credibility lies with the ALJ.  *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (*quoting Waters v. Gardner*, 452 F.2d 855, 858 n.7 (9th Cir. 1971) (*citing Calhoun v. Bailar*, 626 F.2d 145, 150 (9th Cir. 1980))).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician or psychologist.

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 7

*Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (*citing Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). Even if a treating or examining physician's opinion is contradicted, that opinion can be rejected only "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester, supra*, 81 F.3d at 830-31 (*citing Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (*citing Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

In addition, the ALJ must explain why his own interpretations, rather than those of the doctors, are correct. *Reddick, supra*, 157 F.3d at 725 (*citing Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). But, the Commissioner "may not reject 'significant probative evidence' without explanation." *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (*quoting Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (*quoting Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981))). The "ALJ's written decision must state reasons for disregarding [such] evidence." *Flores, supra*, 49 F.3d at 571.

  *(a) Concentration, Persistence and Pace.*

"Concentration, persistence and pace" is one of the four functional areas used to evaluate mental impairments. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). The regulations define it as "the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly

found in work settings" 20 C.F.R. part 404, subpart P .App 1, 12.00(C)(3).  When

assessing a claimant's mental RFC, the ALJ must consider if she can maintain

concentration, persistence and pace on a regular and sustained basis, *i.e.*, 8 hours a day, 5

days a week or the equivalent. 20 C.F.R. §§ 404.1545, 416.945, SSR 96-8p.  The ALJ

found:

> With regard to concentration, persistence or pace, the claimant has
> moderate difficulties.  The claimant testified that she has problems
> focusing and feeling overwhelmed.  However the claimant performed
> well during mental status examinations.  The record indicated that the
> claimant's thoughts were goal directed and her short and long-term
> memory were within normal limits (internal citation to Exhibit 1F/6;
> 3F/13).  In addition she was able to perform simple calculations, follow
> a 3-step command and spell the word "world" forward and backward
> (*id.*) (Exhibit 1F/6; 3F/13)

(Tr. 25).

The problem with the ALJ's conclusions is that none of the explanations provided address the issue of plaintiff's ability to maintain concentration, persistence or pace, much less address these abilities on a regular and sustained basis.  Social Security Regulations caution that a mental status examination should be supplemented by other available evidence. *See* 20 C.F.R. part 404, subpart P App 1, 12.00(C)(3).  "On mental status examinations, concentration is assessed by tasks such as having use of track serial sevens or serial threes from 100" (*id.*).  The citation by the ALJ to a mental status examination was to the examination performed by Denise Chang, M.D.  During that exam, although plaintiff was able to follow a 3-step command, she was unable to complete the serial seven task and erred when attempting to do so (Tr. 292).  A similar problem was encountered by Dr. Seymanski when she performed a mental status

examination and plaintiff refused to complete serial sevens (Tr. 481). Therefore, the mental status examinations did not support the ALJ's conclusions regarding concentration, persistence or pace, and the ALJ's finding to the contrary is not supported by substantial evidence in the record.

With regard to the ALJ's observation that plaintiff's thoughts were goal directed and her short and long term memory were within normal limits (Tr. 25), and with regard to plaintiff's ability to perform simple calculations, follow a 3-step command and spell the word "world" forward and backward, plaintiff argues as follows:

> The fact that one's thoughts are goal-directed does not indicate an ability to maintain concentration, persistence or pace during an entire work day. Neither does the ability to follow a few short commands. Ms. Finkley's intelligence is not at issue. Her ability to focus on tasks -- even simple tasks, for a period of time is when her PTSD symptoms are triggered, when her anxiety is high, when she has a panic attack, and when her depression flares up, is at issue.

(ECF No. 14, p. 6). This Court agrees.

A substantive review of the record reveals that plaintiff regularly showed an inability to sustain concentration, persistence, and pace (*see, e.g.*, Tr. 308-09, 313, 479). None of plaintiff's examining or treating psychologists or mental healthcare professionals support the ALJ's conclusion. Dr. Chang, PhD. opined that plaintiff had the cognitive ability to perform simple and complex tasks, but described plaintiff as agitated, with a mildly irritable and restricted range of affect, and slight psychomotor agitation (Tr. 292). Dr. Chang did not address plaintiff's ability to sustain concentration, persistence and pace although plaintiff erred when attempting to complete serial 7s (*see id.*). Dr. Seymanski, Psy.D. specifically explained that plaintiff had depression, which could affect a variety of

work activities, such as decreased ability to concentrate and focus, complete work tasks and cause increased absenteeism (Tr. 479). She indicated that she had observed plaintiffs' symptoms of depressed mood herself (*see id.*). The ALJ did not provide specific and legitimate reasons for rejecting these opinions from acceptable medical sources. The ALJ must explain why his own interpretations, rather than those of the doctors, are correct. *Reddick, supra*, 157 F.3d at 725 (*citing Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). The ALJ did not do so here.

The ALJ incorrectly stated that plaintiff demonstrated "an adequate understanding and memory and demonstrated sustained concentration and persistence" (Tr. 26). As noted above, this is not reflected in Dr. Chang's analysis. Although the ALJ stated that Dr. Chang's opinion regarding plaintiff's "difficulty" in completing repetitive and complex tasks was "consistent with the medical records" (Tr. 29), the ALJ did not cite what medical records he was referring to, nor provide specific instances in which plaintiff demonstrated sustained concentration, persistence and pace.

The ALJ also discounted Dr. Chang's opinion because "Dr. Chang questioned whether the claimant was fully participating during the examination" (Tr. 29). It should be noted that Dr. Chang did not state that plaintiff was not motivated or that she was malingering. Not participating fully is different than malingering. If a person has a limited ability to focus and concentrate or is overwhelmed with anxiety, she may not be able to participate fully. The ALJ's implied conclusion that this was voluntary is not supported by substantial evidence in the record.

1  Dr. Seymanski indicated that plaintiff's symptoms of depression impacted
2  plaintiff's ability to perform simple routine tasks.  According to Dr. Seymanski, although
3  plaintiff was capable of performing simple routine tasks, her depression "might impact
4  her ability to engage in these activities" (Tr. 481).  She also noted that difficulty
5  concentrating were common symptoms of a person with anxiety (Tr. 479).  The ALJ
6  rejected Dr. Seymanski's conclusions because, according to the ALJ, they "reflected a
7  minimal review of treatment records and Dr. Seymanski appeared to base much of her
8  opinion on the [plaintiff's] subjective reports regarding her previous diagnosis and
9  symptoms . . . ." (Tr. 29).  To the contrary, Dr. Seymanski reported that she based her
10 opinions on examination findings and observations, in addition to a review of the record
11 (Tr. 480).  Regarding the ALJ's conclusion that Dr. Seymanski's report should be
12 questioned because plaintiff likely was aware that state assistance was dependent on Dr.
13 Seymanski's evaluation (Tr. 29), the Ninth Circuit has held that in the absence of other
14 evidence to undermine the credibility of a medical report, the purpose for which the
15 report was obtained does not provide a legitimate basis for rejecting it.  *Reddick v.*
16 *Chater*, 157 F.3d 715, 725 (9th Cir. 1998).
17 
18  These opinions by Dr. Chang and Dr. Seymanski also are consistent with the
19 opinions of other mental healthcare professionals. Plaintiff was evaluated by Caroline
20 Cyr, M.S., in July of 2011 at Greater Lakes Mental Health (Tr. 530-49).  She also was
21 evaluated by Loraine Allen, M.A., at Comprehensive Mental Health on May 10, 2011
22 (Tr. 307; *see also* Tr. 304-320, 563-67).  During these visits, plaintiff was having
23 problems with recurring panic, racing thoughts, nightmares, thoughts of trauma, poor
24

concentration, diminished interest in self care and household tasks (Tr. 313). Plaintiff stated that she was sleeping only 4 hours a night, had low energy, was depressed, stayed home and was isolated (Tr. 540). She was also having flashbacks and nightmares (Tr. 540). Both of these evaluations were consistent with the conclusions of Dr. Seymanski and Dr. Chang. Most importantly, the ALJ did not provide any germane reasons for rejecting these opinions.

Pursuant to the relevant federal regulations, in addition to "acceptable medical sources," that is, sources "who can provide evidence to establish an impairment," 20 C.F.R. § 404.1513 (a), there are "other sources," such as friends and family members, who are defined as "other non-medical sources" and "other sources" such as nurse practitioners, therapists and chiropractors, who are considered other medical sources[1], *see* 20 C.F.R. § 404.1513 (d). *See also Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223-24 (9th Cir. 2010) (*citing* 20 C.F.R. § 404.1513(a), (d)); Social Security Ruling "SSR" 06-3p, 2006 SSR LEXIS 5 at *4-*5, 2006 WL 2329939. An ALJ may disregard opinion evidence provided by "other sources," characterized by the Ninth Circuit as lay testimony, "if the ALJ 'gives reasons germane to each witness for doing so." *Turner, supra*, 613 F.3d at 1224 (*quoting Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001)); *see also Van Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). This is because in determining whether or not "a claimant is disabled, an ALJ must consider lay witness

---

[1] "Other sources" specifically delineated in the relevant federal regulations also include "educational personnel," *see* 20 C.F.R. § 404.1513(d)(2), and public and private "social welfare agency personnel," *see* 20 C.F.R. § 404.1513(d)(3).

testimony concerning a claimant's ability to work." *Stout v. Commissioner*, *Social Security Administration*, 454 F.3d 1050, 1053 (9th Cir. 2006) (*citing Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993); 20 C.F.R. §§ 404.1513(d)(4) and (e), 416.913(d)(4) and (e)).

Because the ALJ failed to provide germane reasons to discount these lay opinions, the ALJ committed legal error.

Instead of accepting the opinions of treating and examining mental health providers, the ALJ relied on the opinions of state consulting experts, Dr. Edward Bailey, Ph.D. and Dr. Thomas Clifford, Ph.D., who opined that plaintiff was capable of performing simple repetitive tasks and non-complex multistep repetitive tasks with occasional lapse from her psychiatric condition (Tr. 28 (*citing* 67-90, 95-124)).

An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." *Lester, supra*, 81 F.3d at 830 (citations omitted); *see also* 20 C.F.R. § 404.1527(d). A non-examining physician's or psychologist's opinion may not constitute substantial evidence by itself sufficient to justify the rejection of an opinion by an examining physician or psychologist. *Lester, supra*, 81 F.3d at 831 (citations omitted). However, "it may constitute substantial evidence when it is consistent with other independent evidence in the record." *Tonapetyan v.Halter,* 242 F.3d 1144, 1149 (9th Cir. 2001) (*citing Magallanes, supra*, 881 F.2d at 752).

In this case, although the ALJ accepted the opinions from these consulting experts, the ALJ failed to cite, and an independent review of the record does not reveal, other independent evidence in the record that supports the consultants' conclusions. For

instance, although the ALJ stated that plaintiff was taking medication that was effective in controlling her symptoms (Tr. 28), the record does not support that conclusion (Tr. 290-91, 294, 309, 477, 539-40). These records reveal that despite taking medications, plaintiff continued to have symptoms (*id.*).

In summary, substantial evidence does not support the ALJ's conclusion that plaintiff can sustain concentration, persistence and pace at work tasks in order to maintain a competitive work pace due to her mental impairments.  This is harmful error because it changes the ALJ's evaluation of plaintiff's RFC, and hence, affects the ultimate non-disability determination.

    b.    *Social Functioning*

"Social functioning" is another one of the four functioning areas used to evaluate mental impairments (20 C.F.R. §§ 404.1520a(c), 416.920a(c)(3)).  The ALJ limited plaintiff to occasional superficial interaction with supervisors, coworkers and the public Tr. 25-26). "Occasional" is defined as up to one-third of the work day.  Social Security Ruling "SSR" 96-9p, 1996 SSR LEXIS 6 at * 8-*9 ("'Occasionally' means occurring from very little up to one-third of the time, and would generally total no more than about 2 hours of an 8-hour workday")).  The ALJ's opinion is not supported by the opinions of examining psychologists, Dr. Chang and Dr. Seymanski.  Dr. Chang, for instance, found her affect irritable during the evaluation (Tr. 293).  She opined that plaintiff had difficulty with appropriate attitude and behavior during the examination, which might lead to difficulty accepting instructions from supervisors (Tr. 294).  She believed that plaintiff's irritability could make it difficult for her to interact with coworkers and the public (*id*).

Also, although the ALJ concluded that plaintiff had "moderate" problems with anxiety (Tr. 25), Dr. Seymanski concluded that she had "marked" problems, including symptoms of fear and paranoid ideation, symptoms of social withdrawal that can affect attendance and ability to interact with coworkers and supervisors while at work, and expressions of anger that could adversely affect social factors in the work place (*see* Tr. 479). Also, plaintiff's symptoms of anxiety and irritability are reflected in the reports from the VA and Greater Lakes Mental Health. For instance, she was noticeably angry at her VA provider (Tr. 558) and showed irritability, exaggerated startle response, and an inability to trust people at Greater Lakes Mental Health (*see e.g.*, Tr. 436, 564).

For the reasons indicated above with regard to concentration, persistence and pace, the ALJ did not provide specific and legitimate reasons for rejecting the examining psychologists' opinions, nor did the ALJ provide germane reasons for rejecting the opinions of other mental healthcare providers. Because the ALJ's conclusion that plaintiff could maintain superficial interaction with supervisors, coworkers and the public for up to one-third of the work day is not supported by substantial evidence in the record, this Court recommends that this matter be reversed and remanded for further proceedings.

**(2)    Whether or not the ALJ properly evaluated the testimonial evidence about her symptoms and limitations.**

The Court already has concluded that the ALJ erred in reviewing the medical evidence with regard to plaintiff's RFC, and that this matter should be reversed and

remanded for further consideration, *see supra*, section 1. In addition, a determination of a claimant's credibility relies in part on the assessment of the medical evidence. *See* 20 C.F.R. § 404.1529(c). Therefore, plaintiff's credibility should be assessed anew following remand of this matter.

**(3) Remedy**

Generally, when the Social Security Administration does not determine a claimant's application properly, "'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). However, the Ninth Circuit has put forth a "test for determining when [improperly rejected] evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (*quoting Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). It is appropriate when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Harman, supra,* 211 F.3d at 1178 (*quoting Smolen*, *supra*, 80 F.3d at 1292).

Here, outstanding issues must be resolved. *See Smolen, supra*, 80 F.3d at 1292. Furthermore, the decision whether to remand a case for additional evidence or simply to award benefits is within the discretion of the court. *Swenson v. Sullivan*, 876 F.2d 683,

689 (9th Cir. 1989) (*citing Varney v. Secretary of HHS*, 859 F.2d 1396, 1399 (9th Cir. 1988)).

## CONCLUSION

Based on these reasons, and the relevant record, the undersigned recommends that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner for further consideration. **JUDGMENT** should be for **PLAINTIFF** and the case should be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on March 7**,** 2014, as noted in the caption.

Dated this 14th day of February, 2014.

J. Richard Creatura
United States Magistrate Judge

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 18